IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ROBERT DAVID BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:15cv196 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Robert David Brown ("Brown") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381-1383f. Brown alleges that the Administrative Law Judge ("ALJ") erred by failing to properly (1) consider the evidence of Brown's impairments; (2) consider the combined effects of Brown's impairments; and (3) assess Brown's credibility. I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND DENYING** Brown's Motion for Summary Judgment (Dkt. No.16) and **GRANTING** the Commissioner's Motion for Summary Judgment. (Dkt. No. 20).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Brown failed to demonstrate that he was disabled

under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Brown protectively filed for DIB and SSI on March 20, 2013, claiming that his disability began on July 31, 2012, due to radiating back pain, leg pain, migraines, allergies, and numbness in his left leg and right foot.[2] R. 170-84. Brown's date last insured was December 31, 2017. R. 13, 237. Thus, he must show that his disability began on or before December 31, 2017 and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Brown's applications at the initial and reconsideration levels of administrative review. R. 51–60, 61–70, 73–86, 87–100. On September 23, 2014, ALJ Jeffrey J. Schueler held a hearing to consider Brown's claims for DIB and SSI. R. 26–50. Counsel represented Brown at the hearing, which included testimony from vocational expert Barry S. Hensley, Ed. D.

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] Brown was 49 years old on the date he alleges he became disabled, a person "closely approaching advanced age" under the Commissioner's regulations. R. 19; 20 C.F.R. §§404.1563, 416.963.

2

On January 9, 2015, the ALJ entered his decision analyzing Brown's claim under the familiar five-step process[3] and denying his claim for benefits. R. 12–20. The ALJ found that Brown was insured at the time of the alleged disability onset, and that he suffered from the severe impairments of chronic headaches and lumbar spine degenerative disc disease with sciatica. R. 15.

The ALJ determined that Brown's impairments did not meet or medically equal a listed impairment, and specifically that his degenerative disc disease did not meet Listing 1.04 and his migraine headaches did not meet Listings 11.01, 11.02, or 11.03. R. 16–17. The ALJ concluded that Brown retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 17. Specifically, the ALJ found that Brown could frequently handle and finger bilaterally but could only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. Id. Further, Brown could never climb ladders, ropes, or scaffolds, and should avoid concentrated exposure to vibration, moving machinery, unprotected heights, and hazards. Id. The ALJ determined that Brown could perform jobs that exist in significant numbers in the national economy, such as security guard, janitor, and counter clerk. R. 19. Thus, the ALJ concluded that Brown was not disabled. R. 20. Brown appealed the ALJ's decision and the Appeals Council denied his request for review on March 23, 2015. R. 1–3.

## ANALYSIS

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

### A. Medical History

Brown asserts that his disability began on July 31, 2012.[4] R. 170–82. On July 30, 2012, Brown injured his back while lifting a tire at work. R. 312. Brown attended four physical therapy appointments at Lucas Therapies in August 2012. R. 302–12. Physical therapy notes from August 2012 indicate that "[Brown's] exam does not show any clinical neurological deficits nor did the MRI," his "'limp' is inconsistent," and he refused to cooperate with the isokinetic testing by "not giving the testing anywhere near maximum effort."[5] R. 305, 307, 310–12. Gregory D. Riebel, M.D., reviewed Brown's MRI in September 2012, which showed mild disk degeneration, with no evidence of disk herniation or nerve compression. R. 315. Dr. Riebel indicated that Brown's treatment options were epidural steroid injections, physical therapy, or pain management, and noted that Brown was "not really sure what he can afford at this time as he has been cut significantly in his pay . . . ." R. 315.

In March 2013, Brown was seen at the Bradley Free Clinic, complaining of constant headaches which "progress to migraines," low back pain going into his legs, and testicular pain. R. 328, 330. Brown returned to the Bradley Free Clinic in April, May, June, September, October, and January 2013 complaining of headaches and/or back pain. R. 333–34, 340, 347,

---

[4] Brown sustained a previous low back injury in 2008 while twisting to reach underneath the dashboard of a car at work, resulting in low back pain and numbness, pain, and tingling in his legs. R. 286, 324. Brown returned to work full duty in May 2009. R. 312. In November 2011, Brown presented to John F. Daugherty, M.D., complaining of low back pain radiating into his left leg, and stating that the over the counter medications he used to control his pain were "starting to upset his stomach." R. 280. Dr. Daugherty prescribed Volatren gel and referred him to Virginia Orthopedic. Id. Brown saw Gregory Riebel, M.D. in November 2011, complaining of continued back and bilateral leg pain. R. 321. Dr. Riebel diagnosed back pain and sciatica and noted that Brown has "dealt with these symptoms for a couple of years now" and "[c]onservative measures have not been helpful." R. 321. Brown had a MRI of his lumbar spine on November 23, 2011, showing "some mild disc degeneration . . . minimal disc bulging, no spinal stenosis or disc herniation." R. 320–21. Brown had an epidural steroid injection on December 6, 2011 and reported 40% improvement, and a second injection on December 21, 2011. R. 316, 318–19. In April 2012, Brown presented to Dr. Daugherty again, complaining of "ongoing back problems" with continuous pain since his 2008 injury. R. 279. Dr. Daugherty prescribed Lortab and completed a handicapped parking form. Id. Brown underwent four chiropractic sessions treating for back pain in June 2012. R. 286, 288–94.

[5] Isokinetic testing is used to evaluate muscle function. See generally www.ncbi.nlm.nih.gov/pm//articles/PMC2865012/

4

348, 369. Brown presented to the Bradley Free Clinic in July 2013 complaining of increased pain and numbness in his right hand and was diagnosed with chronic headaches and carpal tunnel syndrome. R. 341. In October and November 2013 Brown underwent endoscopic surgery for bilateral carpal tunnel syndrome. R. 349–52.

Brown had another MRI in November 2013, which, like the previous MRI, showed mild degenerative disk changes, with no disk protrusion or spinal stenosis. R. 368. Following this second MRI, his doctor at the Bradley Free Clinic recommended Ibuprofen, Neurontin, exercise, and a TENS unit. R. 369. In February 2014 Brown was admitted to the hospital complaining of numbness, a rash, and headaches. R. 375. A CT scan of his head was normal. R. 378, 391. His lab work showed secondary syphilis and on discharge, his diagnoses were rash, abdominal distension, headache, numbness, acute pancreatitis, and ataxia. R. 384, 393.

In April 2014, Brown was referred to a neurologist because of his worsening chronic migraine headaches, reporting he had a headache almost every day. R. 399. The neurologist recommended Botox injections, Medrol pack, and Fioricet or Amerge as needed. R. 399–401. Brown was voluntarily admitted for a psychiatric hospitalization from November 19-25, 2014, after having thoughts of shooting himself, with an admitting diagnosis of major depression, single episode. R. 420–21.

State agency physicians J. Astruc, M.D., and Lewis Singer, M.D., reviewed Brown's medical file in September and December 2013, respectively. R. 56–58, 66–68. Both doctors found that Brown could perform a limited range of light work.[6] R. 80–84, 94–98. The ALJ gave great weight to the opinions of both doctors.

---

[6] Specifically, Dr. Astruc found that Brown could lift and/or carry 20 pounds occasionally and 10 pounds frequently and, in an eight hour workday could stand and/or walk for six hours, and sit for six hours, with normal breaks. Brown could climb ladders, ropes, or scaffolds occasionally, stoop and crawl occasionally, and frequently

5

### B. Evidence of Brown's Impairments

Brown contends that the ALJ gave a "cursory and incomplete" analysis of Brown's medical records and treatment and that he failed to consider all the evidence related to Brown's impairments. Pl.'s Mem. Summ. J. at 20, Dkt. No. 17. Specifically, Brown asserts that the ALJ failed to "properly consider the frequency and intensity of [Brown's] migraines" and "ignored the objective findings . . . in the record regarding [his] back impairment." Pl.'s Mem. Summ. J. at 17, 19, Dkt. No. 17.

Brown claims that the ALJ wrongly found that he did not have ongoing treatment for his migraines when the "medical records document [his] consistent complaints of migraines to the providers at the Bradley Free Clinic, a low income medical provider." Id. at 18. Brown relies on his hearing testimony that he experiences migraines three times a week, accompanied by blurred vision and nausea, and requiring him to lie down in a darkened room, to assert that his migraines caused him to be absent from work at least twice a month. Id. at 18; R. 34–35. The ALJ specifically addressed Brown's headaches as follows:

> In terms of [Brown's] alleged migraine headaches, he reported that he has headaches almost every day and when he suffers from these headaches, he requires complete stillness and rest in a dark and quiet room. He reported trying multiple medications that were not effective. Despite these verbal reports, the medical records do not show ongoing treatment for headaches by way of emergency room visits or visits to urgent care facilities. (. . .) He was advised to start Botox injections for the migraine headaches. His head CT was normal.

R. 17. The fact that the ALJ did not specifically address Brown's complaints of migraines to the providers at the Bradley Free Clinic is not reversible error. First of all, "there is no requirement that the ALJ recite every piece of evidence in order for it to be determined that it was

---

climb ramps, stairs, balance, kneel and crouch. Dr. Singer found that Brown could crouch only occasionally, could never crawl, could never climb ladders, ropes, or scaffolds and had limitations in gross and fine manipulation.

considered." Treadwell v. Colvin, No. 5:13cv370, 2014 U.S. Dist. LEXIS 130353, at *19–20, 2014 WL 4656852, at * 10 (E.D.N.C. Sept. 17, 2014) (unpublished) (citations omitted). Moreover, no providers at the Bradley Free Clinic offered an opinion as to what, if any, disabling effect the migraines caused. Likewise, no providers found that Brown could not work because of his migraines. See 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). Additionally, even without discussing these records, the ALJ concluded that Brown's chronic headaches constituted a severe impairment. R. 15.

Further, while the ALJ found that Brown had a severe impairment of chronic headaches, he found that Brown's claims regarding the limiting effects of these headaches were not credible. R. 17–18. Notably, the record contains no opinion from Brown's doctors that his headaches limited his ability to work. Indeed, the issue is not whether Brown had physical impairments or experienced symptoms, but whether those impairments and symptoms prevented him from performing the limited range of light jobs identified by the vocational expert. See Hays v. Sullivan, 907 F.2d 1453, 1457–58 (4th Cir. 1990) ("An individual does not have to be pain-free in order to be found 'not disabled.'"). The record is simply devoid of medical evidence that Brown cannot work because of his headaches.

Brown also claims that the "ALJ ignored the objective findings in the record regarding [his] back impairment" and argues that the ALJ failed to properly consider the effect of his lumbar degenerative disc disease in his RFC findings. Pl.'s Mem. Summ. J. at 19, Dkt. No. 17.

7

In support, Brown cites to an MRI from 2011 and "objective findings of positive straight leg raising and muscle spasms" from 2009 and 2011. Pl.'s Mem. Summ. J. at 19, Dkt. No. 17; R. 321–22, 324. He also cites to visits with Dr. Daugherty in April 2012. R. 279. Indeed, the record does show that Brown had a slow and/or altered gate, both before and after his claimed disability onset date. R. 315, 321–22. However, the record also shows that Brown had negative straight leg raise in 2009, was "walking with no difficulties" in December 2011 following an epidural injection, had an "inconsistent" limp, and refused to cooperate in isokinetic testing. R. 305, 307, 310–12, 317, 324.

Brown's allegation that the ALJ did not properly consider all of the medical records and evidence of his back impairments is unfounded. The ALJ wrote:

> [Brown] alleges he lives out of a car and has lower back pain associated with mild degenerative disc disease. The medical evidence shows good strength and sensation until February 2014, when he developed acute pancreatitis. He alleges he used a walker and then a cane after his hospitalization in February 2014, but the medical evidence does not support the need for a cane. The veracity of the information at the hearing and in the medical evidence is questionable in relation to the claimants need for an assistive device. The medical evidence showed the claimant could perform a full squat and straight leg raising without pain along with 5/5 strength and normal reflexes. Further examination showed inconsistent effort given, questionable complaints, and little evidence overall to suggest the claimant cannot do at least light work.

R. 18. The ALJ also specifically noted Brown's lumbar spine MRI from 2014 which showed minimal diffuse disc bulge at L3-L4 and L4-L5 with no spinal stenosis and no other significant abnormalities. Id. No requirement exists that the ALJ recite every piece of evidence in order for it to be determined that it was considered. Treadwell, 2014 U.S. Dist. LEXIS 130353, at *19–20, 2014 WL 4656852, at *10; Piney Mountain Coal Co. v. Mays, 176 F.3d 753, 762, n.10 (4th Cir. 1999) ("If a reviewing court can discern 'what the ALJ did and why he did it,' the duty of explanation is satisfied") (quoting Lane Hollow Coal Co. v. Dir., Office of Workers' Comp.

8

Programs, 137 F.3d 799, 803 (4th Cir. 1998)); see also Monroe v. Colvin, , __F.3d.__, No. 15-1098, 2016 WL 3349355, at *10 (4th Cir. June 16, 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion"). Here, the ALJ stated that he carefully considered the evidence, and his decision includes a summary and analysis of the medical records and opinions supporting his findings. R. 17–18.

Brown points to medical records predating his alleged disability onset date as support and essentially argues that based upon the facts in the record, the ALJ should have found that he was incapable of performing light work. This argument amounts to an invitation to re-weigh the evidence and make a de novo determination of the proper RFC in this matter, which I am not permitted to do.[7] The issue before this court is not whether it is plausible that a different fact finder could have drawn a different conclusion or even if the weight of the evidence supports a finding of disability. The standard is whether the ALJ's decision is supported by substantial evidence. So long as this standard—defined as more than a mere scintilla but perhaps somewhat less than a preponderance—is met, I cannot recommend reversing the ALJ. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

Having reviewed the whole record, there is substantial evidence to support the ALJ's conclusion that Brown is capable of performing a limited range of light work. Brown bears the burden of proving not only that he has a severe impairment, but that it is so severe that it prevents him from engaging in any substantial gainful activity that exists in the national economy. Gross v. Heckler, 785 F.2d 1163, 1165 (4th Cir. 1986). In support of his claim, Brown relies largely upon his subjective statements of back pain and migraine pain. However, Brown

---

[7] The Commissioner's argument related to the fact that Brown relies on evidence pre-dating his alleged onset date of July 31, 2012 is unconvincing. "Where evidence predating the onset of disability is relevant to an issue in the case, the ALJ should consider that evidence in making a determination on the issue." Treadwell , 2014 U.S. Dist. LEXIS 130353, at *27, 2014 WL 4656852, at * 10 (citations omitted).

9

cannot make a showing of disability merely by demonstrating that he experiences pain. Green v. Astrue, 3:10cv764, 2011 U.S. Dist. LEXIS 133036, 2011 WL 5593148, at *4 (E.D. Va. Oct. 11, 2011) (citing Hays v. Sullivan, 907 F.2d 1453, 1457-58 (4th Cir. 1990) ("An individual does not have to be pain-free in order to be found 'not disabled.'")), report and recommendation adopted, 3:10cv764, 2011 U.S. Dist. LEXIS 132598, 2011 WL 5599421 (E.D. Va. Nov. 17, 2011). Rather, the pain must be so severe as to prevent the claimant from performing any substantial gainful activity. Foster v. Heckler, 780 F.2d 1125, 1129–30 (4th Cir. 1986). Although Brown's records indicate that he suffers from back pain and headaches, they do not demonstrate that he is functionally unable to perform the limited range of light work set forth by the ALJ.

### C. Cumulative Effect of Impairments

Brown also argues that the ALJ failed to analyze the cumulative effect of his medical impairments; and specifically, that the ALJ did not consider the impact of his severe mental impairments on his ability to work. Pl.'s Mem. Summ. J. at 20–21. I find that the ALJ properly considered the combined effects of Brown's impairments.

"It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render [a] claimant unable to engage in substantial gainful activity." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Where a claimant has multiple impairments, the ALJ must consider the combined effect of those impairments in determining whether the claimant is disabled. Id.; 20 C.F.R. § 404.1523. However, "an ALJ need not explicitly state that he or she has considered a claimant's impairments in combination. What matters is whether it is discernible from the ALJ's decision that he or she did so." Jones v. Astrue, 2011 U.S. Dist. LEXIS 52322, at *42, 2011 WL 1877677, at *12 (W.D. Va. May 17, 2011).

10

Here, the ALJ explicitly found in his opinion that Brown did not have an impairment or combination of impairments that met one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 16. Furthermore, in the ALJ's opinion he considered all of the evidence relating to Brown's alleged physical and mental impairments when developing an RFC and finding Brown not disabled. Moreover, Brown does not explain how the restrictions provided for in the RFC fail to address any combined impact of Brown's impairments and does not offer additional functional limitations he claims should have been included in the RFC. Therefore, I find that the ALJ did not fail to analyze the combined effect of Brown's medical problems.

**D. Credibility**

Brown argues that the ALJ's credibility findings are not supported by substantial evidence. Brown asserts that, contrary to the ALJ's findings, there is no evidence in the record that medication can alleviate his migraines, and the record "documents that [Brown's] lumbar spine impairment clearly imposes significant restrictions on [his] ability to stand, walk, and move about." Pl.'s Mem. Summ. J. at 22, Dkt. No. 17.

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Brown's subjective allegations of his disabling pain, symptoms, and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the record as a whole. 20 C.F.R. §§ 404.1529, 416.929. If a claimant's statements are inconsistent with other evidence, the ALJ may find them less than fully credible and weight them accordingly. See SSR 96-4P, (July 2, 1996); SSR 96-7P, (July 2, 1996).

11

In this case, the ALJ found that Brown's statements regarding the severity of his limitations and pain were not wholly credible because they were not supported by the objective medical evidence and his treatment history. R. 17–18. The ALJ's opinion considered Brown's medical history along with Brown's own allegations. After a review of Brown's treatment records and allegations of disability, the ALJ stated:

> …[I] find that [Brown's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Brown's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

R. 18. The ALJ outlined his reasons for this determination, including that "the medical evidence does not support the need for a cane" and "[t]he veracity of the information at the hearing and in the medical evidence is questionable in relation to [Brown's] need for an assistance device." Id. The ALJ also noted that examinations showed "inconsistent effort given, questionable complaints, and little evidence overall to suggest the claimant cannot do at least light work." Id. The ALJ wrote:

> These facts in the record do not dispute that [Brown] has conditions, which singly or in combination, may cause [him] pain. What these pieces of evidence suggest is that [Brown's] conditions may not be accurately reported, may not exist at the level of severity assumed by the claimant's testimony at hearing and may have other mitigating factors against their negative impact on the [Brown's] ability to engage in work activity.

Id.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight).

12

Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 68 (4th Cir. 2014) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)); see also Monroe, 2016 WL 3349355, at *10 (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and finding that the ALJ did not "satisfactorily explain his decision to partly discredit [claimant's] testimony").

After a review of the entire record, I find that substantial evidence exists to support the ALJ's determination that Brown's testimony is only partially credible, and that Brown is capable of performing work at the level stated in the ALJ's opinion.

## **CONCLUSION**

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to the Honorable Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such

objection.

Entered: August 2, 2016

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge